Peter D. DeChiara
Marie B. Hahn
COHEN, WEISS AND SIMON LLP
900 3rd Avenue, Floor 21
New York, NY 10022
(212) 563-4100
pdechiara@cwsny.com
mhahn@cwsny.com

*Attorneys for Defendant National Association of Letter Carriers, AFL-CIO*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NICKO CALDERON,

                                            Case 1:18-cv-07085-NG-PK

                *Plaintiff*,

    -v.-

UNITED STATES POSTAL SERVICE and
NATIONAL ASSOCIATION OF LETTER CARRIERS,

                *Defendants*.
------------------------------------------------------------------------x

## MEMORANDUM OF DEFENDANT NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

UNDISPUTED FACTS ............................................................................................................... 2

ARGUMENT ................................................................................................................................ 8

I.    SUMMARY JUDGMENT STANDARD ......................................................................... 8

II.    CALDERON PRESENTS NO EVIDENCE THAT NALC BREACHED ITS DUTY OF FAIR REPRESENTATION .......................................................................................... 9

    A.    There Is No Evidence that NALC Acted in an Arbitrary, Discriminatory or Bad Faith Manner ................................................................................................... 9

        1.  No Discrimination ........................................................................................ 9

        2.  No Bad Faith ................................................................................................ 9

        3.  No Arbitrary Conduct ................................................................................ 10

    B.    There is No Evidence that NALC Caused Calderon Injury by Not Taking Additional Steps to Try to Enforce the Decision ................................................. 12

CONCLUSION ........................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Air Line Pilots Ass'n v. O'Neill*,
   499 U.S. 65 (1991)..................................................................................................9, 10

*Barr v. United Parcel Serv.*,
   868 F.2d 36 (2d Cir. 1989).................................................................................................9

*D'Amico v. City of New York*,
   132 F.3d 145 (2d Cir. 1997)...............................................................................................8

*Marquez v. Screen Actors Guild, Inc.*
   525 U.S. 33 (1998)................................................................................................9, 10, 11

*Milk Wagon Drivers & Dairy Emps. v. Elmhurst Dairy, Inc.*,
   14 F.Supp.3d 90 (E.D.N.Y. 2014) ...........................................................................9, 10, 13

*Perero v. Hyatt Corp.*,
   151 F.Supp.3d 277 (E.D.N.Y. 2015) ........................................................................ *passim*

*Reese v. Donahoe*,
   90 F.Supp.3d 11 (E.D.N.Y. 2015) ..................................................................................8, 9

*Sim v. New York Mailers' Union Number 6*,
   166 F.3d 465 (2d Cir. 1999)...............................................................................................9

*Stephens v. Local 1199 SEIU*,
   45 F.Supp.3d 284 (E.D.N.Y. 2014) ...................................................................................8

*Vaughn v. Air Line Pilots Ass'n*,
   604 F.3d 703 (2d Cir. 2010).........................................................................................9, 13

*Verrilli v. N.Y. Newspaper Printing Pressmen's Union No. 2N/1SE*,
   254 F.Supp.3d 540 (E.D.N.Y. 2017) .................................................................................8

*White v. White Rose Food*,
   237 F.3d 174 (2d Cir. 2001)...............................................................................................9

**Other Authorities**

Fed. R. Civ. P. 56(a) ...................................................................................................................8

Defendant National Association of Letter Carriers, AFL-CIO ("NALC") submits this memorandum of law in support of its summary judgment motion.

## PRELIMINARY STATEMENT

In this action, Nicko Calderon ("Calderon") sues both his employer, Defendant United States Postal Service ("USPS"), and his union, NALC. He asserts that USPS failed to comply with a 2015 decision ("Decision") resolving a grievance in his favor and that NALC failed to take sufficient steps to compel USPS's compliance with the Decision. He claims that NALC thereby breached its duty of fair representation ("DFR") to him.

Calderon's DFR claim fails as a matter of law. The undisputed facts demonstrate that the union did everything it could think of to try to compel USPS to comply with the Decision. It filed a grievance against USPS under the grievance procedure in its collective bargaining agreement ("CBA") with USPS, alleging that USPS breached the CBA by not complying with the Decision. The union also filed an unfair labor practice ("ULP") charge against USPS with the National Labor Relation Board ("NLRB"), claiming that USPS had failed to comply with the Decision. After the NLRB's regional office dismissed the charge, the union appealed the decision to the NLRB's General Counsel. NALC also had repeated communications and meetings with USPS management to try to obtain USPS's compliance with the Decision.

Calderon never asked NALC to take any additional steps to obtain USPS's compliance with the Decision. Nor does he point to any other action that NALC could have or should have taken. Indeed, Calderon testified in his deposition that NALC "took all necessary steps."

Plaintiffs in DFR cases face a high hurdle. To establish that a union acted arbitrarily and thereby breached its duty, a DFR plaintiff must establish that the union lacked *any*

1

rational basis or explanation for its conduct. Calderon cannot establish that NALC breached its duty. The undisputed facts show that NALC had a rational basis or explanation for not taking additional steps to enforce the Decision: it could think of no additional steps to take. Moreover, as Calderon admitted in his deposition, he never suggested to NALC that it take any additional steps and he did not know what else the union should have done. Because Calderon cannot establish that NALC lacked *any* rational basis or explanation for not taking additional steps to enforce the Decision, his DFR claim fails as a matter of law.

His claim fails for an additional reason. A DFR plaintiff must prove that the union's acts or omissions caused him injury. To show that NALC injured him by not taking additional steps to enforce the Decision, Calderon would not only have to explain what additional steps NALC should have taken, he would also have to prove that such steps would have resulted in USPS providing him the relief to which he believes the Decision entitled him. Calderon can make no such showing.

For these reasons, as explained further below, NALC is entitled to summary judgment.

## UNDISPUTED FACTS

NALC

NALC is a labor union that serves as the collective bargaining representative of a nationwide bargaining unit of city letter carriers employed by USPS. *See* Jan. 14, 2020 declaration of John Cruz ("Cruz Dec."), filed herewith, at ¶2. NALC Branch 41 is a local labor organization affiliated with NALC that represents city letter carriers employed at postal facilities in Brooklyn, New York. *See id.* Since 2011, when he began his employment with USPS, Calderon has been a member of NALC. *See* May 22, 2020 declaration of Peter DeChiara ("DeChiara Dec."), filed herewith, at Exhibit A, at 10.

The CBA's Grievance Procedure

At all relevant times, NALC and USPS have been parties to the CBA, which governs city letter carriers' terms of employment. *See* Cruz Dec. ¶3. Article 15 of the CBA contains a grievance-arbitration procedure that allows an employee, or the union on the employee's behalf, to grieve an alleged violation of the CBA by USPS. *See* Cruz Dec. ¶4 & Exhibit A, at 64-77. The CBA has a 14-day limitations period for initiating a grievance. *See id.*, Exhibit A at 65 (Art. 15, §2, Informal Step A, §(a)). The first steps of the grievance procedure are Informal Step A and Formal Step A. *See id.*, Exhibit A, at 65-67 (Art. 15, §2). If the union and management do not resolve the grievance at these first two steps, the union may appeal the grievance to Step B. *See id.*, Exhibit A, at 67 (Art. 15, §2, Step B (a)).

At Step B, a two-person "dispute resolution team" ("DRT" or "Step B team") composed of a union representative and a management representative, has the authority to resolve the grievance. *See* Cruz Dec. ¶5 & Exhibit A, at 67 (Art. 15, §2, Step B (b)). If the Step B team reaches "impasse" -- meaning the two members of the team fail to agree on a resolution of the grievance -- NALC may appeal the grievance to arbitration. *See id.*, Exhibit A at 68 (Art. 15, §2, Step B (d)). However, if the Step B team agrees on a resolution of the grievance, the decision is final. *See id.* ¶5.

The 2013-2014 Break in Calderon's USPS Employment

USPS hired Calderon in 2011 as a non-career "transitional employee" ("TE"). *See* DeChiara Dec., Exhibit A at 9-10, 13-14 & Exhibit B. TE's worked a fixed term of 360 days. *See id.*, Exhibit A at 13. In 2013, USPS phased out the TE position and required TE's who wished to continue their USPS employment to take a job in the newly created non-career position called City Carrier Assistant ("CCA"). *See* DeChiara Dec., Exhibit A at 13-14. To

3

become a CCA, a former TE would have to pass an exam. *See id.*, Exhibit A at 133-34. Calderon says that he took the exam, *see id.*, Exhibit A at 134; Exhibit B, but that USPS nonetheless terminated his employment in April 2013, *id.*, Exhibit B.

Calderon did not work for USPS from April 2013 to April 2014. *See* DeChiara Dec., Exhibit A, at 17. In April 2014, USPS hired him as a CCA. *See* DeChiara Dec., Exhibit A, at 17, 185-87; Exhibit B.

In November 2014, USPS converted Calderon from a non-career CCA position to a full-time career letter carrier position. *See id.*, Exhibit A at 18, 197; Exhibit C.

Grievances that the Union Brought on Calderon's Behalf

Calderon believed that USPS had terminated him improperly in April 2013 and he asked the union to file a grievance for him. *See* DeChiara Dec., Exhibit A at 23-24. Branch 41 filed a grievance contending that USPS violated the CBA when it terminated Calderon in 2013. *See id.*, Exhibit A at 24-25; Cruz Dec. ¶6 & Exhibit B. After management denied the grievance at Step A, the union appealed to Step B. *See* Cruz Dec. ¶6. On June 30, 2014, the Step B team found the grievance to be untimely under the CBA's 14-day limitations period, since USPS had terminated Calderon a year before the grievance was filed. *See id.*, Exhibit A, at 25; Cruz Dec. ¶6 & Exhibit C.

In or about August 2014, Branch 41 asserted another grievance for Calderon at his request. *See id.*, Exhibit A, at 29-30; Cruz Dec. ¶7 & Exhibit D. This grievance charged that but for USPS improperly terminating him in April 2013, Calderon would have already converted from a non-career to a career position, as other TE's-turned-CCA's already had, and that the resulting delay in advancing Calderon to a career position cost him pay and benefits. *See id.*, Exhibit D, at 3-4**.** After management denied the grievance at Step A, the union appealed to Step

4

B.  *See* Cruz Dec. ¶7.  On October 6, 2014, the Step B team denied the grievance.  *See* DeChiara Dec., Exhibit A, at 31; Cruz Dec. ¶7 & Exhibit E.

In or about March 2015, after USPS had converted Calderon from a CCA to a career carrier position, Branch 41 initiated yet another grievance for Calderon at his request.  *See id.*, Exhibit A, at 32; Cruz Dec. ¶8 & Exhibit F.  The grievance asserted that USPS violated the CBA by not converting Calderon to a career position sooner, in the same group as other TE's-turned-CCA's who had not been improperly terminated.  *See id.*, Exhibit F.  After management denied the grievance at Step A, the union appealed to Step B.  *See* Cruz Dec. ¶8.  On April 17, 2015, the Step B team issued the Decision, finding that the grievance had merit and ordering "USPS to make [Calderon] whole in all aspects for the time period [he] should have been converted."  *Id.*, Exhibit A, at 35; Cruz Dec. ¶8 & Exhibit G, at 1.

The Union's Efforts to Obtain USPS's Compliance with the Decision

In or about September 2015, Branch 41, at Calderon's request, initiated a grievance ("Non-Compliance Grievance") claiming that USPS had failed to comply with the Decision.  *See* DeChiara Dec., Exhibit A at 38-39; Cruz Dec. ¶9 & Exhibit H.  After management denied the Non-Compliance Grievance at Step A, the union appealed to Step B.  *See id.* ¶9.  On October 26, 2015, the Step B team issued a decision finding that USPS had failed to implement the Decision's remedy and ordering it to do so.  *See* DeChiara Dec., Exhibit A at 39-40; Cruz Dec. ¶9 & Exhibit I.

Believing that USPS had still not complied with the Decision, Calderon asked the union to file a ULP charge on his behalf with the NLRB.  *See* DeChiara Dec., Exhibit A, at 49.  Branch 41 agreed to do so, and on March 18, 2016, John Cruz, then Branch 41's chief steward, filed a ULP charge for Calderon.  *See id.*, Exhibit A at 46; Cruz Dec. ¶10 & Exhibit J, at 1.  In

5

the ULP charge, the union claimed that USPS was not complying with decisions rendered against it.  *See id*., Exhibit J, at 1.  After the NLRB's Regional Office dismissed the charge, *see id.*, Exhibit J, at 2, Cruz on July 5, 2016 appealed the dismissal to the NLRB's General Counsel.  *See id.*, Exhibit J, at 5; DeChiara Dec., Exhibit A at 47-49.  The appeal was denied.  *See* Cruz Dec. ¶11.

In addition to filing the Non-Compliance Grievance and the ULP charge, the union also met with USPS management about the Decision.  For example, on February 2, 2016, Branch 41 President John Murphy emailed USPS Labor Relations official Crystal Powell "to set up an appointment" with her to "resolve the 3 Calderon DRT grievance decisions."  Powell responded to Murphy's email by writing that "the finance department" was "preparing the paperwork for his back-pay" and that "[y]ou may contact Ms. Tenagh Bryant, Manager of Labor [Relations], if you have any questions on this case."  *See* Cruz Dec., Exhibit K.

Murphy and Cruz met with Bryant, and also later met with David Rudy, Bryant's superior in the USPS Human Resources Department, urging both that USPS should comply with the Decision.  *See* Cruz Dec. ¶13.  They also met about the Decision with Postmaster Anthony Impronto, who told them that he would direct the matter to Bryant.  *See id*.

Calderon's 2017 Unfair Labor Practice Charge Against the Union

On January 20, 2017, Calderon filed a ULP charge against Branch 41.  *See* DeChiara Dec., Exhibit A, at 15 & Exhibit D.  The charge asserted that "for reasons that are arbitrary, discriminatory, or in bad faith," the union "failed and refused to seek enforcement of previous decisions" concerning Calderon.  *Id*., Exhibit D.  On or about March 2017, Calderon voluntarily withdrew his ULP charge.  *See id*., Exhibit A at 54 & Exhibit E.

6

The Union's Continued Efforts for Calderon

On March 8, 2017, Branch 41 President Murphy wrote to Calderon. *See* DeChiara Dec., Exhibit A, at 57; Cruz Dec. ¶14 & Exhibit L. Murphy's letter recounted efforts that the union had made to obtain USPS's compliance with the Decision. *See id.*, Exhibit L. Murphy then explained to Calderon that

> Branch 41 is diligently working to ensure that management complies with the recent DRT decisions pertaining to your case. On February 27, 2017, I spoke with USPS [manager] Ms. Bryant about your case. Ms. Bryant informed me that I should address your issues to Ms. Powell, who will be out on sick leave for two weeks. Once Ms. Powell returns, I can address your issues with her.
>
> The Branch will keep you informed of any new developments.

*Id.*

Unfortunately, Powell never returned to work at USPS. *See* Cruz Dec. ¶14. However, Murphy and Cruz continued to attempt to meet with USPS officials about the Decision. *See id*. They had several meetings with Bryant. *See id.* They also met numerous times about the Decision with Kenyon Parlor, another USPS labor relations official, and Parlor told them he was looking into the matter. *See id*. & Exhibit M. These meetings with Parlor continued into 2018. *See id.* ¶15.

Following his receipt of Murphy's letter, Calderon spoke repeatedly over the course of more than a year with Murphy and Cruz. *See* DeChiara Dec., Exhibit A, at 58, 63; Cruz Dec. ¶16. However, at no point did Calderon request or suggest that the union take any particular action to try to enforce the Decision. *See* Cruz Dec. ¶16; DeChiara Dec. Exhibit A, at 64.

7

Calderon's Lawsuit

Calderon filed suit against NALC and USPS on December 13, 2018. *See* Docket Entry #1. His amended complaint asserts one claim against NALC, namely, that NALC breached the DFR. *See* Docket Entry #13, at ¶¶39-42. He claims that NALC breached the DFR because, he asserts, "it failed to enforce the Collective Bargaining Agreement and the Decision." *Id*. P41. His pleading contains no indication of what more Calderon believes the union should have done.

In his deposition, Calderon testified that he was not aware of anything that NALC could have done that it did not do to enforce the Decision. *See* DeChiara Dec., Exhibit A, at 94. He also testified that he was unaware of the union ever refusing to file a grievance that he asked it to file or ever failed to take an action that he asked it to take. *See id*., Exhibit A, at 97. He conceded that the union "took all the necessary steps." *Id*., Exhibit A, at 97.

## ARGUMENT

### I.  SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Verrilli v. N.Y. Newspaper Printing Pressmen's Union No. 2N/1SE*, 254 F.Supp.3d 540, 544 (E.D.N.Y. 2017) (granting union summary judgment on DFR claim); *Reese v. Donahoe*, 90 F.Supp.3d 11, 15 (E.D.N.Y. 2015) (same); *Stephens v. Local 1199 SEIU*, 45 F.Supp.3d 284, 291 (E.D.N.Y. 2014) (same). To defeat such a motion, the non-movant must offer "hard evidence" that a genuine dispute of fact exists. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1997); *accord Stephens*, 45 F.Supp.3d at 292.

Here, there are no genuine disputes of fact material to Calderon's DFR claim, and NALC is entitled to judgment as a matter of law.

8

## II. CALDERON PRESENTS NO EVIDENCE THAT NALC BREACHED ITS DUTY OF FAIR REPRESENTATION

A DFR plaintiff must meet two hurdles. First, the plaintiff must prove that the union's conduct was arbitrary, discriminatory or in bad faith. *See Marquez v. Screen Actors Guild, Inc.* 525 U.S. 33, 44 (1998); *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991); *Vaughn v. Air Line Pilots Ass'n*, 604 F.3d 703, 709 (2d Cir. 2010); *Barr v. United Parcel Serv.*, 868 F.2d 36, 43 (2d Cir. 1989); *Perero v. Hyatt Corp.*, 151 F.Supp.3d 277 (E.D.N.Y. 2015); *Reese*, 90 F.Supp.3d at 16. Second, the plaintiff must show that the union's conduct caused plaintiff's alleged injury. *See Vaughn*, 604 F.3d at 709; *accord Perero*, 151 F.Supp.3d at 283-84; *Milk Wagon Drivers & Dairy Emps. v. Elmhurst Dairy, Inc.*, 14 F.Supp.3d 90, 97 (E.D.N.Y. 2014). Calderon can show neither.

### A. There Is No Evidence that NALC Acted in an Arbitrary, Discriminatory or Bad Faith Manner

Here, there is no evidence that NALC acted in an arbitrary, discriminatory or bad faith manner.

#### 1. No Discrimination

First, the discrimination prong of the DFR test is inapplicable since Calderon stated in discovery that he does not contend that NALC discriminated against him. *See* DeChiara Dec., Exhibit F at 2 (response to interrogatory #4).

#### 2. No Bad Faith

Calderon also relinquished any claim of bad faith. To establish bad faith, a DFR plaintiff must prove "fraudulent, deceitful, or dishonest action" by the union. *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001); *Sim v. New York Mailers' Union Number 6*, 166 F.3d 465, 472 (2d Cir. 1999); *accord Perero*, 151 F.Supp.3d at 284. When asked at his deposition whether any union representative ever lied to him, Calderon answered "not that I

9

know of." DeChiara Dec., Exhibit A at 86. That testimony defeats any claim of bad faith Calderon might have asserted.

In any event, there is no evidence of fraudulent, deceitful or dishonest conduct by NALC. In particular, there is no evidence that any union representative knowingly made a false statement to Calderon.

Indeed, the record shows that NALC acted with complete good faith. The union filed multiple grievances for Calderon and pursued them through Step B of the grievance procedure, filed a ULP charge for him and appealed its dismissal, and also on numerous occasions met with management officials on his behalf. It did everything he requested to try to enforce the Decision. When asked at his deposition, "[d]id the union ever not take any action that you asked the union to take?," Calderon responded "[n]ot that I know of." DeChiara Dec., Exhibit A at 97. He added: "[t]hey took all the necessary steps." *Id.*, Exhibit A at 97.

Moreover, Calderon identifies no reason NALC would have had to act in bad faith. He concedes that the union officials had no animus against him and no motive to act against his interests. *See* DeChiara Dec., Exhibit A, at 79-86 (Calderon testifying that he was not aware that union representatives had any reason to dislike him or to cause him harm).

3. **No Arbitrary Conduct**

Nor is there evidence that NALC acted in an arbitrary manner. In a DFR case, judicial review of union conduct is "highly deferential, recognizing the wide latitude" that unions have to perform their functions. *O'Neill*, 499 U.S. at 78; *accord Perero*, 151 F.Supp.3d at 284. Accordingly, the Supreme Court has held that a union's conduct can only be deemed arbitrary if it is "so far outside a 'wide range of reasonableness' that it is wholly 'irrational.'" *O'Neill*, 499 U.S. at 66 (internal citations omitted); *accord Marquez*, 525 U.S. at 45; *Milk Wagon Drivers*, 14 F.Supp.3d at 97. A union's conduct is "irrational" when "it is without a rational basis or

10

explanation." *Marquez*, 525 U.S. at 46; *Perero*, 151 F.Supp.3d at 284. Thus, to establish that NALC engaged in arbitrary conduct, Calderon has to prove that NALC lacked *any* rational basis or explanation for its conduct. Specifically, he has to show that NALC had *no* rational basis or explanation for not taking additional steps to obtain USPS's compliance with the Decision.

Calderon can make no such showing. In its efforts to obtain USPS's compliance with the Decision, NALC filed the Non-Compliance Grievance and pursued it to Step B, where it obtained a unanimous Step B decision ordering USPS to implement the Decision. *See* Cruz Dec., Exhibits H, L. It also filed a ULP charge with the NLRB to try to obtain USPS's compliance, and then appealed the dismissal of the charge. *See id.*, Exhibit J. In addition, union representatives Murphy and Cruz had numerous meetings with USPS management officials to try to obtain USPS's compliance with the Decision. *See* Cruz Dec. ¶¶12, 13, 15.

NALC took no additional steps to try to obtain USPS's compliance with the Decision because it had already taken every step it could think to take. *See* Cruz Dec. ¶17. Because the union had a "rational basis or explanation" for not taking additional steps -- namely, that it could think of no additional steps to take -- its conduct was not arbitrary and did not breach the DFR.

Moreover, Calderon never requested or suggested that NALC take any additional steps to obtain USPS's compliance with the Decision. *See* DeChiara Dec., Exhibit A at 64; Cruz Dec. ¶16. That Calderon never requested or suggested that NALC take additional steps is another "rational basis or explanation" for NALC not taking additional steps. For that reason, too, NALC's conduct was not arbitrary within the meaning of the DFR test.

Calderon may oppose NALC's motion by arguing, as he did in his February 14, 2020 response to NALC's pre-motion letter, that "*whether or not* the union did everything it

11

could is a stark and obvious fact issue precluding summary judgment." Docket Entry #31, at 1 (emphasis in original); *see also id.* ("it is difficult to imagine how the NALC can prove *as a matter of law* that it 'did everything it could'") (emphasis in original).

This argument would fail. First, to defeat Calderon's DFR claim, NALC does not need to show that it did everything it could have done. It just needs to show that it had some rational basis for not having done more than it did. As explained above, there is a rational explanation for the union not having taken additional steps: it could think of no additional steps to take. *See* Cruz Dec. ¶15 ("In trying to get USPS to comply with the Decision, I took all the steps I could think of taking. I am not aware of what more the union could have done.") In addition, Calderon never requested or suggested that he take additional steps.

In his response to NALC's pre-motion letter, Calderon also argued that there is a dispute of fact as to whether he ever suggested that NALC take additional steps to obtain USPS's compliance with the Decision. *See* Docket Entry #31, at 2. However, there can be no genuine dispute on this point because Calderon *admitted* in his deposition that he made no such suggestions to the union. DeChiara Dec. Exhibit A, at 64. Indeed, he could not have made any such suggestions because he also admitted that he had no ideas about what additional steps the union could take. *See id.*, Exhibit A, at 65.

In sum, the undisputed evidence shows that NALC's conduct was not arbitrary, discriminatory or in bad faith.

B.  **There is No Evidence that NALC Caused Calderon Injury by Not Taking Additional Steps to Try to Enforce the Decision**

Even if Calderon could produce evidence that NALC acted in an arbitrary, discriminatory or bad faith manner, NALC would still be entitled to summary judgment, since there is no evidence that NALC caused him injury by not taking additional steps to obtain

12

USPS's compliance with the Decision. As noted above, a DFR plaintiff must prove that the union's conduct caused plaintiff's alleged injury. *See Vaughn*, 604 F.3d at 709; *accord Perero*, 151 F.Supp.3d at 283-84; *Milk Wagon Drivers*, 14 F.Supp.3d at 97. Calderon's alleged injury was not receiving the pay and other benefits he believes he would have received had USPS complied with the Decision. To prevail on his DFR claim then, Calderon must prove that he would have avoided this injury -- meaning, USPS would have provided him the pay and other benefits -- had NALC taken additional steps to try to obtain its compliance.

Calderon has no such evidence. Neither his complaint nor his amended complaint give any indication of what additional steps NALC should have taken to enforce the Decision. *See* Docket Entries ##1, 13. At his deposition, Calderon answered "[n]o" when asked "[a]re you aware of anything the NALC could have done that it did not do to enforce the decision?" DeChiara Dec., Exhibit A at 94. Indeed, as noted above, Calderon testified that the union "took all the necessary steps." *Id.*, Exhibit A at 97.

Because he fails to establish what additional steps NALC could have taken to obtain USPS's compliance with the Decision, let alone that such steps would have been successful, Calderon fails to present evidence that NALC's not taking additional steps caused him injury. For that reasons, too, his DFR claim fails as a matter of law.

## **CONCLUSION**

For the foregoing reasons, NALC's motion should be granted, and the Court should issue judgment in NALC's favor.

Dated:   June 18, 2020

/s/ *Peter D. DeChiara*
Peter D. DeChiara
Marie B. Hahn
COHEN, WEISS AND SIMON LLP
900 3rd Avenue, Floor 21
New York, NY 10022
212-563-4100
pdechiara@cwsny.com
mhahn@cwsny.com

*Attorneys for Defendant National Association of Letter Carriers, AFL-CIO*