UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

NICKO CALDERON,

                        Plaintiff,

                -against-

UNITED STATES POSTAL SERVICE and
NATIONAL ASSOCIATION OF LETTER
CARRIERS,

                      Defendants.

------------------------------------------------------------ x

**OPINION & ORDER**

18-cv-7085 (NG)(PK)

**GERSHON, United States District Judge:**

        Plaintiff Nicko Calderon brings this action against defendants the United States Postal Service ("USPS") and the National Association of Letter Carriers ("NALC"). Alleging that he is entitled to compensation because his employment from USPS was incorrectly terminated for a year, plaintiff raises a claim of breach of contract against USPS and of breach of the duty of fair representation ("DFR") against NALC. As discussed below, and without plaintiff's objection, I reframe plaintiff's claim against USPS as a federal claim under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which, combined with his breach of the DFR claim, gives rise to what is commonly known as a hybrid action.

        Both defendants have moved for summary judgment. For the reasons discussed below, defendants' motions are granted.

**I.    Factual Background**

        Unless otherwise noted, the following facts are undisputed.

### a. The Relevant Collective Bargaining Agreement

NALC is a labor union that serves as the nationwide collective bargaining representative for city letter carriers that USPS employs. NALC Branch 41 is a local labor organization affiliated with NALC that represents city letter carriers at postal facilities in Brooklyn, New York. NALC and USPS are parties to a collective bargaining agreement ("CBA"), which governs city letter carriers' terms of employment.

The CBA sets forth the binding grievance-arbitration process used to resolve disputes between USPS and NALC concerning letter carriers' employment terms. The first step, Step A, consists of two separate parts. Informal Step A requires an employee to discuss a grievance with his or her immediate supervisor within 14 days of the date on which the employee or union first learned, or may reasonably have been expected to have learned, of the issue. If the employee is not satisfied with the resolution of Informal Step A, the union may appeal to the next step, Formal Step A.

If the union and management fail to resolve the grievance at Step A, the union may appeal to Step B. A two-person "dispute resolution team" ("DRT" or "Step B team") composed of a union representative and a management representative has the authority to resolve a grievance at Step B. Any resolution reached by the Step B team is final. However, if the Step B team is unable to reach a resolution, the union may appeal to arbitration.

### b. Plaintiff's Employment and Termination as a Transitional Employee

Plaintiff began working for USPS as a letter carrier, and simultaneously joined NALC, on February 26, 2011. He was hired as a non-career "transitional employee" ("TE") city carrier; these employees worked a fixed term of 360 days. In 2013, after negotiation with NALC, USPS phased out the TE position and required TEs who wished to continue their employment

to work in the newly created non-career position of City Carrier Assistant ("CCA"). Under this new policy, the TE classification was to be phased out by April 10, 2013.

TEs were not automatically transitioned to CCA positions. To become a CCA, a former TE was required to pass an examination. CCAs were offered opportunities to convert from non-career employees to full-time letter carriers based on their relative standing to each other.

Although plaintiff passed the examination in March 2013,[1] his employment as a TE ended on April 10, 2013, and he was not appointed as a CCA.

### c. Plaintiff is Rehired and Files Three Unsuccessful Grievances

Plaintiff did not work for USPS again until April 12, 2014, when USPS hired him as a CCA working out of the Red Hook Station in Brooklyn.

Plaintiff asked NALC to file a grievance on his behalf to challenge USPS's April 2013 termination of his employment. In May 2014, the union filed such a grievance, requesting that USPS make plaintiff "whole of any wages, and [] give full consideration to converting the grievant [to] a full time carrier as per the other CCA's that were already converted from the same time frame." Cho Decl., Exh. 8 at 3. Management denied the grievance at Step A, and the union appealed to Step B. On June 30, 2014, the Step B team denied the grievance as untimely because it was initiated more than 14 days after plaintiff's April 2013 termination. The union did not appeal.

On August 25, 2014, at plaintiff's request, the union filed another grievance on his behalf. The grievance claimed that, if USPS had not improperly terminated plaintiff's employment in April 2013, plaintiff already would have been converted from a non-career to a

---

[1] While NALC acknowledges only that plaintiff "says that he took the exam," NALC 56.1, ¶ 16, and USPS does not address in its motion whether plaintiff took the exam, several documents in the record indicate that plaintiff passed the exam.

3

career letter carrier position, and therefore he had lost out on pay and benefits. Management denied the grievance at Step A, and the union appealed to Step B. On October 6, 2014, the Step B team denied the grievance, finding that the union had failed to present evidence to sustain its claims. The union did not appeal.

NALC filed another grievance on November 28, 2014, reiterating the merits of its prior claims and challenging how USPS calculated plaintiff's seniority as a CCA. The Step B team denied the grievance on December 19, 2014, concluding that the union had again failed to meet its burden of proof and had unsuccessfully grieved the same issue on multiple occasions. The union did not appeal.

Meanwhile, on November 29, 2014, USPS converted plaintiff from a non-career CCA to a full-time career letter carrier.

### d. The April 2015 Decision

On March 13, 2015, the union filed another grievance, asserting that USPS violated the CBA by not converting plaintiff to a career position 765 days sooner and that USPS was not recognizing plaintiff's correct seniority date. Management denied this grievance at Step A, and the union appealed. On April 17, 2015, the Step B team issued a decision (the "April 2015 Decision") in which it found that the grievance had merit. It ordered "[m]anagement [to] make the Grievant whole in all aspects for the time period the Grievant should have been converted prior to Elie Ann S. Joseph," a letter carrier who had been converted to a career position on May 17, 2014. April 2015 Decision at 1. The Step B team also determined that the grievance was not untimely because it presented "an ongoing issue." *Id.* at 2.

On August 29, 2015, Jennifer Poon, District Complement Coordinator with USPS's Triboro District in New York, emailed a copy of the April 2015 Decision to USPS's Human

4

Resources Shared Services Center ("Shared Services"), which handles USPS's human resources and benefits functions for its employees nationwide. Ms. Poon asked Shared Services to change plaintiff's career effective date and his seniority date.

### e. The Non-Compliance Decision

On September 3, 2015, at plaintiff's request, NALC filed a grievance (the "Non-Compliance Grievance") asserting that USPS had failed to comply with the April 2015 Decision. "If management does not comply with the decision," the grievance concluded, "the union will be requesting a future monetary award." Non-Compliance Grievance at 2.

Management denied the grievance at Step A, and the union appealed to Step B. On October 26, 2015, the Step B team issued a decision (the "Non-Compliance Decision") finding that USPS had failed to implement the Decision's remedy and ordering it to do so. "Failure to comply will result in a punitive monetary award," the decision stated. Non-Compliance Decision at 3.

### f. The November 2015 Decision

On October 15, 2015, the union filed another grievance on plaintiff's behalf (the "October 2015 Grievance"). The union argued that USPS "improperly submitted the wrong step increases" for plaintiff, and it demanded that he be made "whole of any lost wages." October 2015 Grievance at 1, 3. In a supporting document written by plaintiff, plaintiff complained that his salary had fluctuated and that he had not "been fully made whole in every aspect yet." Letter from Calderon dated Oct. 9, 2015.

This grievance was resolved at Step B on November 17, 2015 (the "November 2015 Decision"), when the DRT concluded that there was "a pay anomaly" in plaintiff's pay during certain pay periods and ordered USPS to remedy the error. November 2015 Decision at 4. The

5

DRT was unable to determine plaintiff's correct pay rate based on the documentation in its possession. It therefore directed Shared Services to conduct "a comprehensive review and analysis" of plaintiff's pay for the relevant pay periods, and it ordered USPS to "provide the Union and [plaintiff] a copy of all correspondence it receives from Shared Services pertaining to [plaintiff's] pay." *Id.* Plaintiff asserts, in an affidavit accompanying his opposition to defendants' motions, that he never received this documentation. Nonetheless, in a subsequent pay period in 2016, plaintiff received $2,345.69 in additional pay to reflect the prior mistake.[2] This adjustment is reflected in payroll records that were provided to the court and that USPS showed to plaintiff at his deposition.

### g. Plaintiff's Unfair Labor Practice Charge against USPS

Arguing that USPS had still not fully complied with the April 2015 Decision, plaintiff asked NALC to file an unfair labor practice ("ULP") charge with the National Labor Relations Board ("NLRB"). The union agreed, and, on March 18, 2016, John Cruz, then Branch 41's chief steward, filed a charge alleging that USPS had "not compl[ied] with previous decisions & settlements put forth by arbitrators, DRT resolution teams, local management." NLRB Charge dated March 18, 2016.

After an investigation, the NLRB's Regional Office dismissed the charge on June 20, 2016 "because the evidence did not establish a violation of the National Labor Relations Act." Letter of James G. Paulsen dated June 20, 2016, at 1. Cruz's appeal to the NLRB's General Counsel was denied.

---

[2] Although plaintiff denies this fact, his denial does not raise a genuine issue of material fact. Plaintiff merely cites the November 2015 Decision, which ordered USPS to correct his pay. But that decision does not show whether USPS ultimately complied, and plaintiff offers no evidence to counteract the evidence proffered by USPS in support of its statement that it did. Because plaintiff has not genuinely disputed this fact, I will "consider [it] undisputed for purposes of the motion." *See* Fed. R. Civ. P. 56(e)(2).

6

### h. The Union's Communications with USPS

Meanwhile, on February 2, 2016, Branch 41 President John Murphy emailed Crystal Powell, a USPS Labor Relations Official, to arrange a meeting to "resolve the 3 Calderon DRT grievance decisions," presumably referring to the April 2015 Decision, the Non-Compliance Decision, and the November 2015 Decision. Powell responded that the finance department was preparing the paperwork for plaintiff's back pay and that Murphy could contact Tenagh Bryant, Manager of Labor Relations, with any questions. Murphy and Cruz met with Bryant, and later with Bryant's superior, David Rudy, urging them both to comply with the April 2015 Decision. Murphy and Cruz also met with Postmaster Anthony Impronto, who said he would direct the matter to Bryant.

According to a declaration submitted by Cruz, he and Murphy continued to meet with USPS officials about the April 2015 Decision. Cruz recalled several meetings with Bryant as well as many meetings with Kenyon Parlor, another USPS Labor Relations official, who said he was looking into the matter. Cruz asserts that the meetings with Parlor continued into 2018.

### i. Plaintiff's Unfair Labor Practice Charge Against the Union and Communications Between Plaintiff and the Union

On January 20, 2017, plaintiff filed a ULP charge with the NLRB against Branch 41, asserting that it had "failed and refused to seek enforcement of previous decisions" regarding his termination "for reasons that are arbitrary, discriminatory, or in bad faith." NLRB Charge dated Jan. 20, 2017. Plaintiff voluntarily withdrew his charge on March 28, 2017, and the case was closed.

On March 8, 2017, Murphy wrote a letter to Calderon in which he detailed the efforts the union had taken to obtain USPS's compliance with the April 2015 Decision. He then wrote:

7

> Branch 41 is diligently working to ensure that management complies with the recent DRT decisions pertaining to your case. On February 27, 2017, I spoke with USPS management Ms. Bryant about your case. Ms. Bryant informed me that I should address your issues to Ms. Powell, who will be out on sick leave for two weeks. Once Ms. Powell returns, I can address your issues with her.

Letter from John P. Murphy. Powell never returned to work at USPS. After plaintiff's receipt of this letter, he spoke repeatedly, over the course of more than a year, with Murphy and Cruz.

## II.     Procedural History

Plaintiff initiated this action on December 13, 2018. After each defendant submitted a pre-motion conference letter expressing its intention to file a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), plaintiff filed an amended complaint on March 4, 2019. In response, defendants indicated that they still wished to proceed with their motions to dismiss. At a conference on March 19, 2019, I directed defendants to answer the amended complaint and the parties to complete discovery. After discovery closed, each defendant moved for summary judgment.

## III.    Summary Judgment Standard

A party is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes relating to material facts—*i.e.*, "facts that might affect the outcome of the suit under the governing law"—may preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has asserted facts showing that

8

the non-movant's claims cannot be sustained, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). But "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. While "circumstantial evidence may be. . . sufficient to raise a genuine issue of material fact precluding the grant of summary judgment," *Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002), a party cannot survive a motion for summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted).

**IV.   Discussion**

Plaintiff's breach of contact claim against USPS is "founded directly on rights created by collective-bargaining agreements," and it is thus preempted by § 301 of the Labor Management Relations Act. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). "Under section 301, state law based claims for suits for violation of contracts between an employer and a labor organization are completely preempted," and § 301 and federal common law govern instead. *Hernandez v. Conriv Realty Assocs.,* 116 F.3d 35, 38 (2d Cir. 1997) (internal quotation marks and alterations omitted); *Scibilia v. Verizon Commc'ns, Inc.*, 2011 WL 1204741, at *2 (E.D.N.Y. Mar. 29, 2011), *aff'd*, 493 F. App'x 225 (2d Cir. 2012). Therefore, I

9

will "re-frame[ plaintiff's claim] as a federal claim under § 301." *See Scibilia*, 493 F. App'x at 226–27.

A lawsuit brought against an employer under § 301 and against a union for breach of the DFR is called a "hybrid" action. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164−65 (1983). Plaintiff recognizes that he has brought such an action. In a hybrid action, a plaintiff's claim against his or her employer and his or her claim against the union "are inextricably interdependent." *Id*. (internal quotation marks omitted). "'To prevail against either the company or the Union, employee-plaintiffs must not only show that [the employer's action] was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'" *Id.* (quoting *United Parcel Serv. v. Mitchell,* 451 U.S. 56, 67 (1981) (Stewart, J., concurring in the judgment)) (alterations omitted); *accord White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 178−79 (2d Cir. 2001). "Failure to establish that the union breached its duty of fair representation necessarily precludes the claim against the employer." *Pinkney v. Progressive Home Health Servs.*, 367 F. App'x 210, 212 (2d Cir. 2010).

At the heart of this lawsuit is plaintiff's argument that he was wronged by USPS when he was not converted to a CCA in April 2013. He asserts that the April 2015 Decision's language directing USPS to make plaintiff "whole in all aspects for the time period the Grievant should have been converted prior to Elie Ann S. Joseph" required USPS to pay his salary for the year in which he did not work as a letter carrier. USPS, on the other hand, claims that it fully complied with the April 2015 Decision by adjusting plaintiff's seniority date and pay and awarding him back pay based on the delay in converting him to a career position from the CCA position that he held starting in April 2014. USPS argues the April 2015 Decision did not require it to provide plaintiff with back pay for the year, from April 2013 to April 2014, that

10

plaintiff was not employed by USPS. This dispute forms the basis of plaintiff's claim against USPS. Yet, it is unnecessary for me to determine whether there are genuine issues of material fact that require the claim to be presented to a jury or, as USPS seeks, whether the claim should be disposed of on summary judgment. This is because, as discussed below, no reasonable juror could find that NALC breached the DFR. For this same reason, I need not address defendants' argument that plaintiff's claim against NALC, or at least some bases of his claim, should be dismissed as untimely.

### a. Whether NALC Breached the Duty of Fair Representation

"The duty of fair representation is inferred from unions' exclusive authority under the National Labor Relations Act (NLRA) . . . to represent all employees in a bargaining unit." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 563 (1990). A claim for breach of the DFR has two elements. *White*, 237 F.3d at 179. First, a union's conduct toward a member of its bargaining unit must be "'arbitrary, discriminatory, or in bad faith,'" and, second, there must be a causal connection between the union's wrongful conduct and a plaintiff's injuries. *Id.* (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)). Here, plaintiff claims that NALC's conduct was arbitrary and in bad faith; he does not assert that the union's actions were discriminatory.

A union acts arbitrarily only if its behavior is "so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." *Marquez*, 525 U.S. at 45 (internal quotation marks omitted). It is not enough that a union made a bad or less than optimal decision; its action must be "without a rational basis or explanation." *Id.* at 46; *accord Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989). This standard affords "the union

11

room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez*, 525 U.S. at 45–46.

"A union acts in bad faith when it acts with an improper intent, purpose, or motive." *Spellacy v. Airline Pilots Ass'n–Int'l,* 156 F.3d 120, 126 (2d Cir. 1998). "A showing of bad faith requires a showing of fraudulent, deceitful, or dishonest action." *White*, 237 F.3d at 179 (internal quotation marks and alterations omitted).

Here, contrary to plaintiff's assertion that NALC did not "continue fighting to get" him back pay for his year of unemployment, Opp. at 13, the undisputed facts show that the union advocated for plaintiff. On plaintiff's behalf, it filed numerous grievances—some of which were successful—and it filed a ULP charge against USPS with the NLRB. The union also initiated frequent discussions with USPS officials to advocate for plaintiff. And it communicated often with plaintiff about the status of its advocacy. Indeed, at his deposition, plaintiff testified that NALC "took all the necessary steps" on his behalf and that he was unaware of anything else it could have done to advance his interests. Calderon Dep. at 94, 97.

Nonetheless, in his opposition, plaintiff argues that NALC breached the DFR because (1) the three initial grievances the union filed were rejected as untimely or lacking the proper documentation; (2) NALC did not pursue punitive monetary relief from USPS for failing to comply with the Non-Compliance Decision; and (3) NALC did not enforce the November 2015 Decision. I will address each argument in turn.

### i. Rejection of the Three Initial Grievances

First, it is undisputed that the Step B team rejected the first grievance NALC filed as untimely, rejected the second grievance because the union had not submitted evidence to sustain its claim, and rejected the third grievance because the union had again failed to meet its burden

and had grieved the issue multiple times. But the record lacks any evidence that these failures resulted from arbitrariness or bad faith. In fact, plaintiff himself describes NALC's behavior merely as "negligent and incompetent," Opp. at 13, and evidence of negligence does not satisfy the first element of the DFR test. *Scibilia*, 493 F. App'x at 227; *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 710 (2d Cir. 2010). Moreover, as plaintiff concedes, "NALC finally got it right" when it filed its March 13, 2015 grievance, Opp. at 4, and thus plaintiff cannot satisfy the test's second element—that NALC's initial errors caused him harm. Indeed, plaintiff's assertion that the April 2015 Decision granted him the relief he seeks undermines any argument that he was harmed by the union's initial actions. Therefore, the rejection of NALC's first three grievances cannot sustain plaintiff's claim that the union breached the DFR.

### ii.  NALC's Failure to Pursue Punitive Monetary Relief

In support of his argument that NALC breached the DFR by not pursuing punitive monetary relief, plaintiff points out that the Non-Compliance Grievance threatened that the union would seek "a future monetary award" if USPS did not comply and that the Non-Compliance Decision asserted that "failure to comply will result in a punitive monetary award." Non-Compliance Grievance at 2; Non-Compliance Decision at 3. But, that—in actively attempting to secure back pay for plaintiff—the union chose to threaten, but not ultimately pursue, punitive sanctions against USPS is, at most, "a tactical error" and falls far short of the type of conduct that could support a claim for breach of the DFR. *See Ustad v. Int'l Bhd. of Teamsters, Loc. 747*, 607 F. App'x 67, 69 (2d Cir. 2015); *Martino v. Metro N. Commuter R. Co.*, 2013 WL 3208548, at *7 (D. Conn. June 24, 2013), *aff'd*, 582 F. App'x 27 (2d Cir. 2014).

Further, a declaration from Cruz, submitted with NALC's reply, confirms that the union's decision not to pursue this remedy was not arbitrary or the result of bad faith.[3] Cruz explained that the union typically seeks a punitive monetary remedy when filing a non-compliance grievance against USPS, and that the Step B team occasionally includes language in a non-compliance decision stating that failure to comply will result in such a remedy, as it did in plaintiff's case.  However, in such cases, Cruz never files a subsequent grievance seeking such a remedy as he "know[s] from [his] years of experience as a union steward and officer that USPS maintains a firmly held position that it is not required to pay a punitive remedy," making filing such a grievance "futile."  Cruz Reply Decl., ¶ 4.  Additionally, given the history of plaintiff's case, Cruz "had no reason to believe that filing a third grievance and obtaining a third Step B decision would have led to USPS's compliance," even if the union had sought punitive monetary relief.  *Id.*, ¶ 6.  Even if Cruz's reasoning were incorrect, his decision would have constituted a strategic error, not a breach of the DRF.  *See Ustad*, 607 F. App'x at 69; *Martino*, 2013 WL 3208548, at *7.

Finally, the union's decision not to pursue punitive damages cannot establish a violation of the DFR for an additional reason—the record lacks evidence that plaintiff asked the union to file such a grievance.  If plaintiff "did not ask the Union to process a grievance on this issue, [he] cannot complain that the Union failed to represent [him] properly."  *Flanigan v. (Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.) Truck Drivers Loc. No. 671*, 942 F.2d 824, 829 (2d Cir. 1991); *accord Goodman v. Port Auth. of New York & New Jersey*, 2011

---

[3] Because plaintiff raised for the first time in his opposition the argument that NALC breached the DFR by not filing a grievance seeking punitive monetary relief, I can consider an additional declaration from Cruz on reply. *See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000).  Nonetheless, I note that I would have ruled in favor of defendants even if Cruz had not submitted this additional declaration.

14

WL 3423800, at *5 (S.D.N.Y. Aug. 4, 2011); *Badlam v. Reynolds Metals Co.*, 46 F. Supp. 2d 187, 201 (N.D.N.Y. 1999).

In short, no reasonable factfinder could conclude that the union's decision to threaten—but not pursue—punitive sanctions against USPS was arbitrary or made in bad faith, and therefore NALC's failure to pursue this remedy cannot sustain plaintiff's claim against the union. *See Scibilia*, 493 F. App'x at 228; *Pinkney*, 367 F. App'x at 212−13. Moreover, while the parties do not address the second requirement of a claim of breach of the DFR, I note that plaintiff has presented no evidence upon which a factfinder could find a causal connection between NALC's inaction and his injuries. *See White*, 237 F.3d at 179.

### iii. NALC's Failure to Seek Documentation

In a brief reference in his opposition, plaintiff asserts that NALC breached the DFR by failing "to continue fighting" for "the documentation" referenced in the November 2015 Decision. Opp. at 13. NALC responds that this argument is outside the scope of this lawsuit, untimely, and meritless.

As discussed above, in its November 2015 Decision, the DRT concluded that there was "a pay anomaly" in plaintiff's pay during the conversion period previously disputed and ordered USPS to remedy the error. November 2015 Decision at 4. Because it was unable to determine plaintiff's correct pay rate based on the documentation it received, the DRT directed Shared Services to conduct "a comprehensive review and analysis" of plaintiff's pay for the relevant pay periods and directed USPS to "provide the Union and [plaintiff] a copy of all correspondence it receives from Shared Services pertaining to [plaintiff's] pay." *Id.* at 4.

I agree with the union that its failure to press for the documentation does not establish a violation of the DFR because the record contains no evidence that Calderon asked NALC to

15

enforce this decision. *See Flanigan*, 942 F.2d at 829. In addition, although no party has addressed the second element of a DFR claim, I find that plaintiff cannot satisfy it. He has presented no evidence upon which a reasonable juror could conclude that he was prejudiced by NALC's failure to grieve the fact that USPS did not provide him with the documentation at issue. As noted above, after the November 2015 Decision, plaintiff did receive additional pay to reflect the prior mistake.

*   *   *

In sum, plaintiff has failed to establish a genuine issue of material fact as to whether the union breached the DFR. Because plaintiff must establish a violation of the DFR to pursue his claim against USPS, summary judgment must be granted to both defendants. *See DelCostello*, 462 U.S. at 164–65; *Mitchell*, 451 U.S. at 66−67.

## V.     Conclusion

For the reasons stated above, defendants' motions for summary judgment are granted. The Clerk of Court is directed to enter judgment in favor of defendants on all claims and to close the case.

**SO ORDERED.**

_____/S/_____
**NINA GERSHON**
**United States District Judge**

April 25, 2022
Brooklyn, New York